## JOHN STOKES *v.* CALEB RODMAN.

A member of the Narragansett tribe of Indians, who does not reside in the town of Charlestown, is suable at law upon a promissory note given by him prior to the time when the Revised Statutes went into operation, although then by law exempt from such suit; nor is such change, applying to the remedy only, obnoxious to the charge of being retroactive legislation, nor, if so, void, under art. 1, sect. 12, of the constitution.

ASSUMPSIT against the defendant, described as of Providence, trader, as late copartner doing business therein in company with one S. L. Freeman, on a promissory note made by his firm, under their style of S. L. Freeman & Co., for $92.29, dated June 22, 1854, and payable to the plaintiff on demand.

Plea, that before, and at the time of making said note, and ever since, the defendant was, and is, a member of the Narragansett tribe of Indians, and as such, entitled to be exempt from being compelled to answer any writ or process at law, for the recovery of the said supposed debt or demand of the plaintiff, &c.

Replication, protesting that the defendant is not a member of the Indian tribe, as in the plea alleged, that the defendant, at the date of said note, and at the commencement of this action, and ever since, has resided and done business on his own account in the city of Providence, and now resides and does business there, and is not, and was not then, a resident in the town of Charlestown in this state, or a resident with said tribe of Indians, &c.

General demurrer and joinder.

The plea of the general issue was also filed.

*Currey*, for the defendant :—

The plaintiffs declare on a promissory note purporting to be made by S. L. Freeman & Co., dated June 22, 1854, and against defendant as a partner in said firm. The defendant pleads privilege from suit as being a member of the Narragansett tribe. The plaintiffs reply, that the defendant does not reside with the tribe, but in the city of Providence. Defendant demurs, and the plaintiffs join in demurrer.

Stokes *v.* Rodman.

At the making of the note, the public laws of 1844 contained the following act, passed in 1822 :—

" No writ or process at law shall be brought against the said tribe, or any individual thereof, for the recovery of any debt contracted subsequently to the passage of this act." Public Laws, 1844, p. 472, § 2.

The Revised Statutes, p. 176, tit. 26, § 9, contain the same provisions with those of the foregoing act, with the qualification between " thereof " and " for " in the second line, " resident in the town of Charlestown."

The defendant submits to the court,—

1st. That if the act of 1822 is repealed by the Revised Statutes, this court will not intend that the repeal was designed to have a retrospective effect. *Jones* v. *Wooten,* 1 Harr. 77 ; *Boyce* v. *Holmes,* 2 Ala. 54.

2d. To give to the repeal act a retrospective effect in this case would be repugnant to the 12th section of our Bill of Rights, and to the general principles of jurisprudence. 1 Kent, 454, 455, and notes ; *Ogden* v. *Blackledge,* 2 Cranch, 272 ; *Eakin* v. *Raub,* 12 Serg. & Rawle, 363–372 ; *Bedford* v. *Shilling,* 4 Ib. 401 ; *Brunswick* v. *Litchfield,* 2 Greenl. 28 ; *Merrill* v. *Sherburne,* 1 N. H. 199 ; 1 Harr. 77 ; 2 Ala. 54, cited above.

*C. F.* and *J. Tillinghast,* for the plaintiff:—

1st. If the defendant was, by the statute of 1844, (Digest of 1844, p. 472, § 3,) exempt from suit in this action, the exemption has been repealed and removed by Rev. Stats. ch. 176, § 9; and this action having been brought after the Revised Statutes took effect, this section is in no sense retrospective in its operation upon this case ; for it creates no contract. A valid contract already existed, and is not varied or changed by the act, which merely gives a remedy where none, or it might be questioned if any, existed before. There may be many valid contracts where there is no present remedy to enforce them. 3 Story on the Constitution, §§ 1375, 1376. The statute takes away no vested, established, rights; for, in the language of Parker, C. J., *Foster et al., Ex'rs,* v. *Essex Bank,* 16 Mass. 273, " There is no such thing as a vested right to do wrong."

The defendant having enjoyed the benefit of this contract, cannot have acquired a vested right to avoid his liability upon it. At the most, it was a mere statute of personal exemption, conferring no right which it was not perfectly competent for the general assembly, at any time, to remove. It is merely a remedial statute, and hence, even if retrospective, entirely within the scope of legislative authority. *Mason* v. *Haile,* 12 Wheat. 370, 378; *Pratt* v. *Jones,* 25 Verm. 303; *Hinckle* v. *Riffert,* 6 Barr. 196; *Syracuse City Bank* v. *Davis,* 16 Barb. S. C. Rep. 188; *Foster et al., Ex'rs,* v. *Essex Bank,* 16 Mass. 245; *Commonwealth* v. *Bird,* 12 Mass. 423; *Ballard* v. *Ridgeley,* 1 Morris, (Iowa,) 27; *Ingraham* v. *Dooley,* 1 Ib. 28.

Besides, too, the argument that the defendant here, under the statute of 1844, acquired a *vested right* which this act of the Revised Statutes could not take away, goes too far; for, if anything, it was a vested right not to be sued in the state courts on any contract whatsoever, future as well as past; that is, it was a personal privilege acquired, and, by this argument, vested, to be forever exempt from suit. It cannot be doubted, that the act does operate on all contracts made subsequent to its taking effect.

2d. By the true construction of the old act of 1844, the defendant was not exempt from suit on this contract. A true construction of that act requires the defendant, in order to be exempt, to reside, or make his home, with the tribe. It cannot have been intended, that mere membership by birth should work a fraud on others, as is attempted in this case.

AMES, C. J. By an act of the general assembly, concerning the Narragansett tribe of Indians, passed in 1822, it was, amongst other things, provided, " that no writ or process at law shall be brought against the said tribe, or any individual thereof, for the recovery of any debt contracted subsequently to the passing of this act; that it shall be the duty of all courts and justices in the state, in case any such writ or process be brought, to dismiss the same, and to adjudge double costs against the plaintiff." Dig. 1844, p. 472. This statute was undoubtedly passed to protect against their own improvidence and the cupidity of others the wretched remnant of this once powerful tribe, which,

from numbering, as estimated just prior to the landing at Plymouth, some 18,000 souls, who inhabited or domineered over the whole mainland territory of the state, as well as the islands within and around Narragansett Bay, and the eastern end of Long Island, has, by the combined influence of war, pestilence, and their own vices, dwindled down to about 130 ·persons of mixed race, resident on their reservation in the central part of the town of Charlestown, and now comprising only about one seventh of the area of that town. Similar legislation is found upon our statute books as early as 1718, and, from time to time modified as occasion required, has existed ever since. From the report of the commissioner of the tribe, made to the general assembly at its January session, 1858, it appears, that in addition to the above number of residents on the reservation, there are, as estimated, some 150 to 200 non-residents, who, scattered through the country, and engaged in different employments, claim, in some way, connection with the tribe. It would seem from the record that the defendant, one of these, resided and did business in Providence, and as a member of a firm there, became obliged by the note which forms the subject of this suit. Taking into view the obvious injustice of allowing this last. class of members, who, from the mixture of race, had no distinctive mark, to be exempted from the usual remedies upon their contracts, the general assembly, in the revision of 1857, so modified the act of 1822, as to make it protect from suit only members of the tribe resident in the town of Charlestown. Rev. Stats. ch. 176, § 9, p. 426.

Now, the objection of the defendant, raised by his demurrer to the plaintiff's replication, is, in substance, that inasmuch as the note here sued, was given prior to the above modification of the law, the new statute ought not to be construed to retroact upon the contract of the defendant, or, what he claims to be the same thing, to allow a remedy at law upon it; and, if it is to be so construed, that it becomes thereby obnoxious to art. 1, § 12, of the constitution, which prohibits the general assembly from passing any *ex post facto* law, or law impairing the obligation of contracts.

It is difficult to see the force of this objection, in either of the

points of view suggested. The protection of the defendant against suit upon this note depended wholly upon the old statute, which is repealed, and necessarily ceased with it. The rule of construction referred to does not apply to the case at bar. By no legal legerdemain can a reservation of the protection against suits upon past contracts be imported into an act absolutely repealing the only law under which the protection could be claimed. The demurrer admits the statement in the replication, that the defendant did not, either at the time of contract, or at the time of the commencement of this action, reside in the town of Charlestown, or with the tribe; and it thus appears, that he cannot claim the protection of the existing statute, construing it, as we do, to apply prospectively only; that is, to actions commenced after it went into operation.

Nor is the new legislation obnoxious to the constitutional objection urged. It does not retroact upon past *contracts.* The statute repealed applied to *remedies* only; and, in practice, turned the creditors of the tribe, or of any members of it, away from ordinary suits at law to recover their debts, to applications for relief to the general assembly, under whose wardship the tribe has been nearly ever since it was subdued in 1675. The new act is wholly prospective; since, only from its date forward did the old exemption from suits cease, and the modified exemption, applicable only to future suits, exist. But if it did retroact it would not be obnoxious to the objection taken. It would not be *ex post facto;* since it deals not with crimes, but with civil remedies only. It would not impair the obligation of contracts; for it only confers a greater sanction upon those impaired by the former statute—altered to meet the demands of justice under new circumstances.

The replication must be sustained as a good answer to the plea, and the cause stand for trial upon the general issue.